IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WALTER E. CRAIG,

        Plaintiff,

        v.

EMILY W. MURPHY, Administrator
of General Services Administration,

        Defendant.

:  CIVIL ACTION NO.
:  1:17-CV-5112-CAP-JSA
:
:
:
:
:
:
:  **FINAL REPORT AND**
:  **RECOMMENDATION ON A MOTION**
:  **FOR SUMMARY JUDGMENT**

Plaintiff Walter E. Craig filed the above-captioned action on December 12, 2017. Plaintiff filed a First Amended Complaint [8] on April 27, 2018, and filed a Second Amended Complaint [26] on October 15, 2018. Plaintiff alleges that he unsuccessfully applied for employment as an Equipment Specialist at the U.S. General Services Administration ("GSA") in 2013. Plaintiff claims that, in failing to select him for this position, Defendant Emily W. Murphy,[1] Administrator of the

---

[1] Although Plaintiff named Timothy O. Horne, Acting Administrator of GSA, as the Defendant in the original Complaint [1], Defendant states that Emily W. Murphy has assumed the role of Administrator of the General Services Administration. *See* Notice of Appearance [4] at 1 n.1. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, she is automatically substituted as the Defendant. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 2000e-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant"). After the Clerk had substituted Ms. Murphy as the proper Defendant, however, Plaintiff filed a First Amended Complaint [8] and Second Amended Complaint [26] and again named Timothy O. Horne as the Defendant in both amendments. As a result, the Clerk terminated Ms. Murphy as a Defendant and substituted Timothy O. Horne on October 16, 2018. It appears from

General Services Administration, discriminated against him on the basis of his race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.; and discriminated against him on the basis of his age in violation of the the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*.

The action is before the Court on Defendant's Motion for Summary Judgment [51]. For the reasons discussed below, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [51] be **GRANTED** and that judgment be entered in favor of Defendant on all of Plaintiff's claims.

## I.   FACTS

Unless otherwise indicated, the Court draws the following facts from Defendant's "Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment" [51-2] ("Def. SMF") and "Plaintiff's Statement of Facts in Support of Opposition to Motion for Summary Judgment" [54-3] ("Pl. SMF"), and their associated exhibits. The Court may also draw some facts from the Plaintiff's "Response to Statement of Undisputed Material Facts" [54-2] ("Pl. Resp.

---

the parties' briefs, however, that Ms. Murphy is the correct Defendant. Accordingly, the Clerk is **DIRECTED** to update the docket to reflect that Emily W. Murphy is the Defendant.

SMF") and "Defendant's Response to Plaintiff's Statement of Facts in Support of Opposition to Motion for Summary Judgment" [57-2] ("Def. Resp. SMF").

For those facts submitted by Defendant that are supported by citations to record evidence, and for which Plaintiff has not expressly disputed with citations to record evidence, the Court must deem those facts admitted, pursuant to Local Rule 56.1(B). *See* LR 56.1(B)(2)(a)(2), NDGa ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1)."). Accordingly, for those facts submitted by Defendant that Plaintiff has failed to dispute with citations to record evidence, the Court must accept the facts as true, so long as the facts are supported by citations to record evidence, do not make credibility determinations, and do not involve legal conclusions. *See E.E.O.C. v. Atlanta Gastroenterology Assocs., LLC*, No. CIV. A. 1:05-CV-2504-TWT, 2007 WL 602212, at *3 (N.D. Ga. Feb. 16, 2007).

The Court has excluded assertions of fact by either party that are clearly immaterial, or presented as arguments or legal conclusions, and has excluded assertions of fact unsupported by a citation to admissible evidence in the record or

asserted only in a party's brief and not in its statement of facts. *See* LR 56.1(B)(1), NDGa ("The court will not consider any fact: (a) not supported by a citation to evidence . . . or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."). *See also* LR 56.1(B)(2)(b) (respondent's statement of facts must also comply with LR 56.1(B)(1)). The Court has nevertheless viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

Plaintiff Walter E. Craig has training in automotive mechanics and has held employment in the field of automotive maintenance from the late 1966 until 2009, including active duty and reserve U.S. Army service (retiring at the rank of Chief Petty Officer), working for General Motors and Buick as a Service Manager, and fleet maintenance for a federal contractor. Pl. SMF at ¶ 1. Plaintiff testified numerous times as an expert witness on behalf of General Motors ("GM") related to his product knowledge as a representative of GM. Pl. SMF at ¶ 2. Plaintiff is also certified to teach automotive mechanics at the vocational school level and had six years of teaching experience in the field. Pl. SMF at ¶ 3. Defendant contends, however, that

Plaintiff testified during his deposition that he had not taught in that field since 1988. Def. Resp. SMF at ¶ 3; Pl. Dep. [51-3] at 21-22.

On or about February 5, 2013, the GSA advertised a job opening for an equipment specialist position advertised through Vacancy Announcement No. 1304024TYDEA (the "Vacancy Announcement"). Def. SMF at ¶¶ 2, 8. The Vacancy Announcement advertised for an equipment specialist and described the duties of the position as follows:

> Provides nationwide support to customers and other Fleet personnel, through a national maintenance control system that serves as a nationwide electronic link for all GSA Fleet customers. Coordinates vehicle repairs, including major mechanical repairs, and determines the nature of the repair, costs associated with or projected for the repair, cost replacements for parts, etc. Acts as a principal point of contact to GSA Fleet customers and contractors throughout the country. Guides customers and contractors through the entire process of procuring vehicle repairs, including identifying and recommending to the customer which repair facilities to use to obtain the most cost effective and timely repair possible. Resolves customer vehicle complaints, determines corrective actions and coordinates and resolves billing issues. Collects and analyzes data compiled from computer generated reports to track trends pertaining to performance differences among regions. Reviews and evaluates all vehicle quality deficiency reports, service bulletins and vehicle manufacturer service recommendations, in addition to any other pertinent sources of information. Coordinates with the vehicle manufacturer's technical representatives to obtain all warranted repairs at minimum or no cost to the Government. Ensures that repair estimates from GSA contractors are in accordance with

contract requirements and industry standards. Negotiates best prices with open market vendors for repair services and supplies.

Pl. SMF at ¶ 4; Def. Resp. SMF at ¶ 4; Def. Ex. B, Sanders Decl. [51-4], Att. 1, U.S. GSA Report of Investigation ("ROI") [51-5] at 51-52.

In Count I of the Second Amended Complaint [26], Plaintiff alleges that he was discriminated against on the basis of race when the GSA did not select him for a position in the Vacancy Announcement. Def. SMF at ¶ 2. Plaintiff identifies his race as African American. Def. SMF at ¶ 3. Count II alleges that Plaintiff was discriminated against on the basis of sex when the GSA did not select Plaintiff for a position advertised through the Vacancy Announcement. Def. SMF at ¶ 4. Plaintiff identifies his sex as male. Def. SMF at ¶ 5. Count III alleges that Plaintiff was discriminated against on the basis of age when the GSA did not select Plaintiff for a position advertised through the Vacancy Announcement. Def. SMF at ¶ 6. At the time that Plaintiff applied for the position and received an interview, he was 66 years old. Def. SMF at ¶ 7; Pl. SMF at ¶ 6.

The Vacancy Announcement stated that the GSA was hiring one full-time equipment specialist. Def. SMF at ¶ 9. The Vacancy Announcement further stated under 'Other Information' that "[a]dditional vacancies may be filled from this announcement as needed." Def. SMF at ¶ 10. The GSA ultimately hired four

full-time equipment specialists through the Vacancy Announcement. Def. SMF at ¶ 11.

"Equipment specialists" at the GSA are also referred to as "MCC technicians," "MCC specialists," or "Techs," and those terms are interchangeable. Def. SMF at ¶¶ 12-13. The primary responsibility of an equipment specialist is to respond to phone calls via a 1-800 number from customers who have questions about the GSA fleet or are in a malfunctioning GSA fleet vehicle. Def. SMF at ¶ 14. Equipment specialists are responsible for answering between 60 and 80 phone calls per day, writing purchase orders for repairs, and issuing government credit cards. Def. SMF at ¶ 15. When selecting equipment specialists, the interview panelists are looking for good customer service skills, the ability to converse over the phone, and mechanical knowledge. Def. SMF at ¶ 16.

At some time between February 5, 2013 and February 13, 2013, Plaintiff applied for the equipment specialist position that the GSA was hiring through the Vacancy Announcement. Def. SMF at ¶ 17; Pl. SMF at ¶ 4. At the time that Plaintiff submitted an application, there were 17 equipment specialists in the Maintenance Control Center ("MCC"), and 16 identified as male. Def. SMF at ¶¶ 18-19. Of the 17 equipment specialists, 11 identified as black or African American. Def. SMF at ¶ 20. Of the 17 equipment specialists, 15 were over the age of 40. Def. SMF at ¶ 21.

Based on Plaintiff's application and résumé, the GSA determined that Plaintiff met the minimum qualifications for the Vacancy Announcement. Def. SMF at ¶ 22. As a result of meeting the minimum qualifications, Plaintiff was placed on the "best qualified" certificate. Def. SMF at ¶ 23. The applicants placed on the "best qualified" certificate were not ranked in any way. Def. SMF at ¶ 24. The "best qualified" certificate was provided to the selecting official along with the applicants' résumés. Def. SMF at ¶¶ 25-26. The selecting official for the Vacancy Announcement was John Marlow. Def. SMF at ¶ 27. Once Mr. Marlow received the "best qualified" certificate, he had fifteen business days in which to coordinate and conduct interviews for the positions and make a selection. Def. SMF at ¶ 28.

All applicants placed on the "best qualified" certificate were offered a first-round interview for the equipment specialist positions. Def. SMF at ¶ 29. There were 37 applicants placed on the "best qualified" certificate and there were 36 first-round interviews conducted. Def. SMF at ¶¶ 30-31. Before each interview, the first-round interview panelists were provided with the applicant's résumé and application by Mr. Marlow. Def. SMF at ¶ 32. Each first-round interview panel consisted of three GSA employees. Def. SMF at ¶ 33. For the majority of first-round interviews, the three panelists were John Marlow, Christopher Curtis, and Julie "Lynne" Ridings. Def. SMF at ¶ 34. Both Mr. Marlow and Mr. Curtis are men and Mr. Marlow, Mr. Curtis, and Ms. Ridings were all over the age of 40. Def. SMF at

¶¶ 35-36. When either Mr. Curtis or Ms. Ridings was unavailable to interview an applicant, Anthony Barker was substituted as an interview panelist. Def. SMF at ¶ 37.

The applicants selected for the equipment specialist positions by the selecting official were Nathan Barr, Harold Powell, Eric Kshywonis, and LaTonya Blunt. Def. SMF at ¶ 38; Pl. SMF at ¶ 7. Mr. Barr is a white male who was 45 years old at the time that he was selected for one of the equipment specialist positions under the Vacancy Announcement. Def. SMF at ¶ 39; Pl. SMF at ¶¶ 7-8. Mr. Powell is an African American male who was 43 years old at the time that he was selected for one of the equipment specialist positions under the Vacancy Announcement. Def. SMF at ¶ 40; Pl. SMF at ¶¶ 7-8. Mr. Kshywonis is a white male who was 31 years old at the time that he was selected for one of the equipment specialist positions under the Vacancy Announcement. Def. SMF at ¶ 41; Pl. SMF at ¶¶ 7-8. Ms. Blunt is an African American female who was 27 years old at the time that she was selected for one of the equipment specialist positions. Def. SMF at ¶ 42; Pl. SMF at ¶¶ 7-8.

Plaintiff was offered a first-round interview for the equipment specialist positions. Def. SMF at ¶ 43. Plaintiff received notification that he was not selected for the equipment specialist positions on April 11, 2013. Def. SMF at ¶ 44. After not being selected for the equipment specialist positions, Plaintiff did not apply for any other positions with the Federal Government. Def. SMF at ¶ 45.

Plaintiff's first-round interview was conducted by Mr. Marlow, Mr. Curtis, and Ms. Ridings. Def. SMF at ¶ 46. Mr. Marlow is the Manager of the MCC at the GSA in Atlanta, Georgia. Def. SMF at ¶ 47. As the Manager of the MCC, Mr. Marlow oversees the day-to-day activities of the MCC specialists. Def. SMF at ¶ 48. Mr. Marlow cannot personally recall anything about Plaintiff or about Plaintiff's first-round interview. Def. SMF at ¶ 49. All of Mr. Marlow's recollections about Plaintiff's first-round interview are based on the interview notes that Mr. Marlow recorded during Plaintiff's interview. Def. SMF at ¶ 50. Mr. Marlow also cannot personally recall anything about the first-round interviews of the successful candidates, and all of his recollections about those first-round interviews are based on the interview notes that he recorded during the. Barr's interviews. Def. SMF at ¶¶ 51-58.

Mr. Curtis has been an MCC Technician since 1991, and has been an MCC Technician Team Lead with the GSA since 1999. Def. SMF at ¶¶ 59-61. As an MCC Technician, Mr. Curtis is responsible for answering phone calls from customers and assisting customers with their GSA fleet vehicles. Def. SMF at ¶ 62. As a Team Lead, Mr. Curtis is responsible for assisting other MCC Technicians when they have questions or concerns. Def. SMF at ¶ 63. Mr. Curtis has participated in interview panels since the early 2000s. Def. SMF at ¶ 64. Mr. Curtis was not the selecting

official for the equipment specialist positions filled by the Vacancy Announcement. Def. SMF at ¶ 65.

Mr. Curtis cannot personally recall anything about Plaintiff or about Plaintiff's first-round interview, and all of his recollections about Plaintiff's first-round interview are based on the interview notes that he recorded during Plaintiff's interview. Def. SMF at ¶¶ 66-67. Mr. Curtis also cannot personally recall anything about the first-round interviews of Mr. Barr or Ms. Blunt, and all of his recollections about those interviews are based on his interview notes. Def. SMF at ¶¶ 68-71. Mr. Curtis did not conduct the first-round interviews of Eric Kshywonis or Harold Powell. Def. SMF at ¶¶ 72-73.

Ms. Ridings is a Team Lead Transportation Operations Specialist with the GSA Fleet. Def. SMF at ¶ 74. 76. Ms. Ridings has been a Transportation Operations Specialist since 2007 and a Team Lead since 2016. Def. SMF at ¶¶ 75-76. As a Team Lead, Ms. Ridings is responsible for reviewing the completed work of other Transportation Operations Specialists. Def. SMF at ¶ 77. Ms. Ridings was not involved in any second-round interviews for the equipment specialist positions and was not the selecting official for the equipment specialist positions filled by the Vacancy Announcement. Def. SMF at ¶¶ 78-79. Ms. Ridings cannot personally recall anything about Plaintiff or about Plaintiff's first-round interview and all of her recollections about Plaintiff's first-round interview are based on the interview notes

11

that she recorded during Plaintiff's interview. Def. SMF at ¶¶ 80-81. Ms. Ridings also cannot recall anything about the first-round interviews of the successful applicants, and all of her recollections about those interviews are based on her interview notes. Def. SMF at ¶¶ 82-89.[2]

For some of the interviews, Ms. Ridings placed "dots" next to questions that designated the initial score that she believed the applicants' answer deserved. Def. SMF at ¶ 90. Some of the score sheets completed by Ms. Ridings did not have "dots" because Ms. Ridings was either more comfortable with the scoring process or because the interview was conducted by telephone. Def. SMF at ¶ 91. The initial score marked by Ms. Ridings on Plaintiff's interview score sheet with "dots" exactly match the final score that Ms. Ridings gave to Plaintiff. Def. SMF at ¶ 92.

Prior to any the first-round interviews, the interview panelists met to discuss the interview process. Def. SMF at ¶ 93. During that discussion, the first-round interview panelists discussed how to rate applicants' answers, how the panel would ask questions, and other procedural matters. Def. SMF at ¶ 94. At the start of each first-round interview, Mr. Marlow introduced the interview panelists and went over

---

[2]  Starting with Plaintiff's paragraph 88 of his response to Defendant's Statement of Facts, Plaintiff's numbered paragraphs in his response do not correspond to Defendant's numbered paragraphs. *See* Pl. Resp. SMF [54-2] at ¶¶ 88-245. The Court nevertheless has considered Plaintiff's responses as if they were properly numbered.

administrative details with each applicant. Def. SMF at ¶ 95. During the first-round interviews, each applicant was asked the same ten questions.[3] Def. SMF at ¶ 96. Each applicant was scored based on his or her answer to each of the 10 first-round interview questions. Def. SMF at ¶ 97. Each applicant's answers were scored by each first-round interview panelist with a score of 1-5. Def. SMF at ¶ 98. A score of one was given to well below average or unacceptable answers; a score of 2 was given to below average answers; a score of 3 was given to average or good answers; a score of 4 was given to above average or very good answers; and a score of 5 was given to great or excellent answers. Def. SMF at ¶¶ 99-103.

Outside of the 10 first-round interview questions, applicants were asked very little. Def. SMF at ¶ 104. At the beginning of the interview, applicants were asked to "tell us about yourself." Def. SMF at ¶ 105. At the beginning of the interview,

---

[3] In response to this assertion, Plaintiff states that this fact is "[d]isputed as stated." Pl. Resp. SMF at ¶ 95 (responding to Def. SMF at ¶ 96). Plaintiff alleges that the "[i]nterviewees were asked additional questions and had additional conversations between just the ten listed interview questions." *Id*. Plaintiff's assertion that the applicants were asked additional questions is not inconsistent with Defendant's assertion that the applicants were asked the same ten questions. More importantly, however, Plaintiff cites to no record evidence disputing Defendant's asserted fact; thus, pursuant to Local Rule 56.1, the Court cannot consider the Plaintiff's unsupported fact. As discussed above, for those facts submitted by Defendant that are supported by citations to record evidence, the Court must deem them admitted unless Plaintiff has presented a citation to record evidence indicating that the fact is in genuine dispute. *See* LR 56.1(B)(2)(a)(2), NDGa.

applicants were also asked what they knew about the GSA or the GSA fleet. Def. SMF at ¶ 106. Applicants also may have been asked follow-up questions to answers provided to the 10 first-round interview questions. Def. SMF at ¶ 107. Applicants also were asked whether they had any questions for the interview panelists. Def. SMF at ¶ 108. No other questions were asked of the applicants. Def. SMF at ¶ 109.

The only answers that applicants were scored on were answers to the 10 first-round interview questions. Def. SMF at ¶ 110. The interview panelists took notes and scored the applicants' answers on first-round interview scoresheets. Def. SMF at ¶ 111. Plaintiff does not recall the exact words that he used to answer the 10 first-round interview questions. Def. SMF at ¶ 112; *see* Pl. Dep. at 57 ("I don't recall the exact way I answered those questions."). Plaintiff admits, however, that Mr. Marlow, Ms. Ridings, and Mr. Curtis were generally accurate in their recording of Plaintiff's answers to the 10 first-round interview questions. Def. SMF at ¶ 113.

Defendant contends that Plaintiff was not asked by the interview panelists how long he planned to work at the GSA, but Plaintiff disputes this and contends that he was asked how long he planned to work there. Def. SMF at ¶ 114; Pl. Resp. SMF at ¶ 113; Pl. SMF at ¶ 15; Pl. Dep. at 51; *see also* Curtis Dep. [51-8] at 35; Curtis Decl. [51-9] at ¶ 34; Marlow Decl. [51-7] at ¶ 33; Ridings Decl. [51-11] at ¶ 39. Plaintiff contends that Mr. Curtis asked him how long he planned to work at GSA and he responded that that he would work as long as his health allowed him to.

Pl. SMF at ¶ 16; Pl. Dep. at 51 ("Chris asked me, he said, well, sir, if you're select for this job, how long do you plan to work? And I was kind of shocked. I looked at them, and I said well I plan to work, as long as my health hold on.").

The interview panelists understood that GSA policy required scores given by the interview panelists not to be more than 2 points apart. Def. SMF at ¶ 115. Therefore, if all interview panelists gave a particular answer a score between 3 and 5, then that would comply with the GSA policy because the scores were not more than 2 points apart. Def. SMF at ¶ 116. However, if the scores were more than 2 points apart (for example, a score of 2 and a score of 5), then the interview panelists discussed the scores and determined why such different scores were given. Def. SMF at ¶ 117. If scores were not within 2 points of each other, the interview panelists tried to find a compromise score. Def. SMF at ¶ 118. Mr. Curtis, Ms. Ridings, and Mr. Marlow do not recall ever having to raise or lower a score under this policy. Def. SMF at ¶ 119.

At the end of the first-round interviews, the panelist decided that applicants with a combined average score of 40 or higher would advance to the second-round. Def. SMF at ¶ 120. As a result, scores given by each of the 3 interview panelists for each of the 10 first-round interview questions were added and divided by 3. Def. SMF at ¶ 121. All applicants with a score of 40 or higher were invited to a second-round interview. Def. SMF at ¶ 122. All applicants with a score of less than 40 were

informed that they had not been selected for the equipment specialist positions. Def. SMF at ¶ 123.

First-round interview scores for each applicant were put into a spreadsheet. Def. SMF at ¶ 124. Plaintiff received a total average first-round interview score of 35.33. Def. SMF at ¶ 125. Mr. Barr received a total average first-round interview score of 41.67; Ms. Blunt received a total average first-round interview score of 41.33; Mr. Kshywonis received a total average first-round interview score of 41.67; and Mr. Powell received a total average first-round interview score of 45. Def. SMF at ¶¶ 126-29. Of the 36 applicants who completed a first-round interview, 7 received a total average first-round interview score greater than 40. Def. SMF at ¶ 130. Of the 36 applicants who completed a first-round interview, Plaintiff's total average first-round interview score ranked 11th. Def. SMF at ¶ 131.

Plaintiff admits that throughout the application and first-round interview process, no GSA employee mentioned, referenced, or made any comment regarding Plaintiff's race or sex. Def. SMF at ¶¶ 132-33. The only alleged comment made during the application and first-round interview process that Plaintiff alleges referenced his age was "how long do you plan to work with the company," which Plaintiff claims was asked during his interview. Def. SMF at ¶ 134. Plaintiff's race and sex were never referenced in the interview notes recorded by the GSA employees who conducted Plaintiff's first-round interview. Def. SMF at ¶¶ 135-36.

16

Plaintiff is unable to identify any GSA policy that was violated by the Vacancy Announcement. Def. SMF at ¶ 137.

Question No. 1 of the first-round interview asked: "What specific type of work do you enjoy doing?" Def. SMF at ¶ 138; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 1, Mr. Marlow scored Plaintiff's response a 3, Mr. Powell's response a 3, Mr. Barr's response a 5, Mr. Kshywonis' response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 139. In response to Question No. 1, Mr. Marlow wrote that Plaintiff stated that he "enjoy[ed] maintenance type work." Def. SMF at ¶ 140; Marlow Decl. at ¶¶ 62-67.

Mr. Marlow scored Mr. Barr's answer higher than Plaintiff's because Mr. Barr also stated that he enjoyed "dealing with maintenance" but then expanded by stating that he enjoyed "troubleshooting" and "customer service." Def. SMF at ¶ 141; Marlow Decl. at ¶¶ 62-67. Plaintiff did not mention customer service in his response to Question No. 1. Def. SMF at ¶ 142; Marlow Decl. at ¶¶ 62-67. Mr. Marlow scored Mr. Kshywonis' answer higher than Plaintiff's because Mr. Kshywonis responded to Question No. 1 by stating that he enjoyed "anything that challenged me." Def. SMF at ¶ 143. Mr. Marlow scored Ms. Blunt's answer higher than Plaintiff's because Ms. Blunt responded to Question No. 1 by stating that she enjoyed "customer service" and "complicated issues." Def. SMF at ¶ 144.

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 1, Plaintiff contends that the "record does not support these facts" because Mr. Marlow also testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 139-43 (responding to Def. SMF at ¶¶ 140-44); Marlow Decl. at ¶ 61; Marlow Dep. [51-6] at 20, 23.

For Question No. 1, Mr. Curtis scored Plaintiff's response a 4, Mr. Barr's response a 5, and Ms. Blunt's response a 4. Def. SMF at ¶ 145; *see* ROI, Walter Craig Score Sheet at 138-43; Nathan Barr Score Sheet at 149-54; LaTonya Blunt Score Sheet at 162-67; Eric Kshywonis Score Sheet at 173-78; Harold Powell Score Sheet at 182-87. Mr. Curtis scored Mr. Barr's response to Question No. 1 higher than Plaintiff's because Mr. Barr's response had greater detail than Plaintiff's. Def. SMF at ¶ 146. Mr. Curtis also scored Mr. Barr's response to Question No. 1 higher than Plaintiff's because Mr. Barr's response indicated greater enthusiasm for the work. Def. SMF at ¶ 147.

For Question No. 1, Ms. Ridings scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Kshywonis' response a 4, Mr. Barr's response a 5, and Ms. Blunt's response a 4. Def. SMF at ¶ 148; *see* ROI, Walter Craig Score Sheet at 138-43; Nathan Barr Score Sheet at 149-54; LaTonya Blunt Score Sheet at 162-67; Eric

Kshywonis Score Sheet at 173-78; Harold Powell Score Sheet at 182-87. Ms. Ridings scored Mr. Barr's response to Question No. 1 higher than Plaintiff's because, while both applicants stated that they enjoyed "maintenance," Mr. Barr also stated that he enjoyed "trouble shooting" and "pleas[ing] customers." Def. SMF at ¶ 149.

Question No. 2 of the first-round interview asked: "What short and long term goals do you have for your career? How will this job help you meet those goals?" Def. SMF at ¶ 150. For Question No. 2, Mr. Marlow scored Plaintiff's response a 3, Mr. Powell's response a 4, Mr. Barr's response a 5, Mr. Kshywonis' response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 151. In response to Question No. 2, Mr. Marlow did not believe that Plaintiff answered the second part of the question, "How will this job help you meet those goals?" Def. SMF at ¶ 152; Marlow Decl. at ¶ 68. Mr. Marlow scored Mr. Barr's answer higher than Plaintiff's because Mr. Marlow thought that Mr. Barr answered both parts of the question and also discussed wanting to "grow into [the] job." Def. SMF at ¶ 153; Marlow Decl. at ¶ 68. Mr. Marlow scored Mr. Kshywonis' answer higher than Plaintiff's because Mr. Marlow thought that Mr. Kshywonis answered both parts of the question, and Mr. Kshywonis discussed one of his goals being to "serve my country." Def. SMF at ¶ 154; Marlow Decl. at ¶ 68. Mr. Marlow scored Ms. Blunt's answer higher than Plaintiff's because Mr. Marlow thought that Ms. Blunt answered both parts of the question, and Ms.

Blunt discussed one day becoming an agency "administrator." Def. SMF at ¶ 155; Marlow Decl. at ¶ 68.

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 2, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 151-54 (responding to Def. SMF at ¶¶ 152-55); Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23.

For Question No. 2, Mr. Curtis scored Plaintiff's response a 3, Mr. Barr's response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 156. Mr. Curtis did not think that Plaintiff fully answered the question and either did not mention or very briefly mentioned any career goals, as asked by the question. Def. SMF at ¶ 157. Mr. Curtis scored Mr. Barr's response to Question No. 2 higher than Plaintiff's because Mr. Barr discussed wanting to grow in the equipment specialist job and move into management. Def. SMF at ¶ 158. Mr. Curtis scored Ms. Blunt's response to Question No. 2 higher than Plaintiff's because Ms. Blunt discussed working on her PhD, having a goal of being an "agency administrator," and how the equipment specialist position was an opportunity to gain experience. Def. SMF at ¶ 159.

For Question No. 2, Ms. Ridings scored Plaintiff's response a 4, Mr. Powell's response a 5, Mr. Kshywonis' response a 4, Mr. Barr's response a 5, and Ms. Blunt's

response a 4. Def. SMF at ¶ 160. In response to being asked about his short-term and long-term goals, Ms. Ridings wrote that Plaintiff stated that he "[g]ets tired of doing nothing." Def. SMF at ¶ 161; Ridings Decl. at ¶¶ 46-51. According to Ms. Ridings, Plaintiff also did not provide any career specific goals, and she scored Mr. Powell's answer higher than Plaintiff's because Mr. Powell stated that his long-term goals were to "continue to move up" and be involved in "management. . . leadership and coach and train people." Def. SMF at ¶¶ 162-63; Ridings Decl. at ¶¶ 46-51. Mr. Powell discussed a desire to move into management, whereas Plaintiff did not. Def. SMF at ¶ 164; Ridings Decl. at ¶¶ 46-51. Ms. Ridings scored Mr. Barr's answer higher than Plaintiff's because Mr. Barr stated that his long-term goals were "to grow in the job. . . and to be management one day." Def. SMF at ¶ 165; Ridings Decl. at ¶¶ 46-51. Mr. Barr discussed a desire to move into management, whereas Plaintiff did not. Def. SMF at ¶ 166; Ridings Decl. at ¶¶ 46-51.

While Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 2, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶¶ 161-65 (responding to Def. SMF at ¶¶ 162-66); Ridings Dep. [51-10] at 16-18, 29-31, 35.

Mr. Marlow, Mr. Curtis, and Ms. Ridings all recorded on their interview score sheets that in response to Question No. 2, Plaintiff spontaneously stated that he intended to "work for another 5 years." Def. SMF at ¶ 167.

Question No. 3 of the first-round interview asked: "What specific computer and technical skills do you have that you would consider yourself an expert in? and why?" Def. SMF at ¶ 168. For Question No. 3, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Barr's response a 4, Mr. Kshywonis' response a 5, and Ms. Blunt's response a 5. Def. SMF at ¶ 169. In response to Question No. 1, Mr. Marlow wrote that Plaintiff stated that he was "good on a computer" and listed some of the programs that he had worked with "excel, word, SAMS, SAMSS, GM – systems." Def. SMF at ¶ 170. Mr. Marlow scored Ms. Blunt's answer higher than Plaintiff's because Ms. Blunt, in addition to stating some of the computer systems that she had used, discussed teaching these systems to employers and colleagues in the past. Def. SMF at ¶ 171; Marlow Decl. at ¶ 69. Mr. Marlow scored Mr. Kshywonis' answer higher than Plaintiff's because Mr. Marlow thought that Mr. Kshywonis had experience with more advanced computer systems such as "FrontPage" and "Visual Basic," and because Mr. Kshywonis discussed being a "quick learner." Def. SMF at ¶ 172; Marlow Decl. at ¶ 69.

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 3, Plaintiff contends that the "record does

not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 170-71 (responding to Def. SMF at ¶¶ 171-72); Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 3, Mr. Curtis scored Plaintiff's response a 3, Mr. Barr's response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 173. Mr. Curtis scored Ms. Blunt's response to Question No. 3 higher than Plaintiff's because Ms. Blunt discussed having previously taught computer and technical skills to her colleagues and stated that she enjoyed being in the role of teacher. Def. SMF at ¶ 174. Plaintiff's response to Question No. 3 did not discuss experience teaching computer or technical skills to others. Def. SMF at ¶ 175.

For Question No. 3, Ms. Ridings scored Plaintiff's response a 3, Mr. Powell's response a 5, Mr. Kshywonis' response a 5, Mr. Barr's response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 176. Ms. Ridings wrote that Plaintiff's answer stated that he was "Good on computer[s]" and listed various computer programs that he had experience with ("excel, word, PPT, SAM/SARSS."). Def. SMF at ¶ 177. Mr. Powell's answer stated various computer programs that he had experience with ("excel," "word," and "PPT"), the times in which he had used those experiences, and that he had the ability to "learn[] and adapt. . . easily." Def. SMF at ¶ 178. According

to Ms. Ridings, Mr. Powell discussed learning and adapting, whereas Plaintiff did not. Def. SMF at ¶ 179; Ridings Decl. at ¶¶ 52-60.

For Question 3, Mr. Kshywonis listed various computer programs that he had experience with such as "windows 8," "excel," and "PPT." Def. SMF at ¶ 180; Ridings Decl. at ¶¶ 52-60. Mr. Kshywonis stated that he was a "quick learner," that he "likes to figure out how programs work," and that he "learns quick[ly]." Def. SMF at ¶ 181; Ridings Decl. at ¶¶ 52-60. Mr. Kshywonis discussed learning and adapting, whereas Plaintiff did not. Def. SMF at ¶ 182; Ridings Decl. at ¶¶ 52-60.

Based on her notes, Ms. Ridings is unable to ascertain why she scored Mr. Barr's responses to Question No. 3 as a 4. Def. SMF at ¶ 183; Ridings Decl. at ¶¶ 52-60. However, all of Ms. Ridings' scores were based on the answers provided by the applicants. Def. SMF at ¶ 184; Ridings Decl. at ¶¶ 52-60. Ms. Ridings' score for Ms. Blunt was based on Ms. Blunt's listing various computer programs that she had experience with such as "SAMS," "Oracle Financial," and "excel." Def. SMF at ¶ 185; Ridings Decl. at ¶¶ 52-60. Ms. Ridings' score for Ms. Blunt was based on Ms. Blunt's describing her past experience teaching computer programs to her previous employers and colleagues. Def. SMF at ¶ 186; Ridings Decl. at ¶¶ 52-60.

While Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 3, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the

events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶¶ 178-81, 184-85 (responding to Def. SMF at ¶¶ 179-82, 185-86); Ridings Dep. at 16-18, 29-31, 35.

Question No. 4 of the first-round interview asked: "How do you define work ethic?" Def. SMF at ¶ 187; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 4, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 5, Mr. Barr's response a 4, Mr. Kshywonis' response a 5, and Ms. Blunt's response a 4. Def. SMF at ¶ 188; Marlow Decl. at ¶ 70. In response to Question No. 4, Mr. Marlow wrote that Plaintiff defined work ethic as "person comes to work, do this work, do this job." Def. SMF at ¶ 189; Marlow Decl. at ¶ 70.

Mr. Marlow scored Mr. Powell's response higher than Plaintiff's because Mr. Marlow thought Mr. Powell did a better job of defining work ethic. Def. SMF at ¶ 190; Marlow Decl. at ¶ 70. For example, Mr. Powell defined work ethic as "giving customer service [that] you expect to get" and "doing the right thing when no one is looking." Def. SMF at ¶ 191; Marlow Decl. at ¶ 70. Mr. Marlow scored Mr. Kshywonis' answer higher than Plaintiff's because Mr. Marlow thought that Mr. Kshywonis did a better job of defining work ethic. Def. SMF at ¶ 192; Marlow Decl. at ¶ 70 ("my core values, honesty, fairness, and hard work").

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 4, Plaintiff contends that the "record does

not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 189, 191 (responding to Def. SMF at ¶¶ 190, 92); Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 4, Mr. Curtis scored Plaintiff's response a 4, Mr. Barr's response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 193; Curtis Decl. at ¶¶ 53-54. For Question No. 4, Ms. Ridings scored Plaintiff's response a 3, Mr. Powell's response a 5, Mr. Kshywonis' response a 4, Mr. Barr's response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 194; Ridings Decl. at ¶¶ 61-68. Ms. Ridings wrote that Plaintiff defined work ethic as "Do work, be on time, follow orders, get along." Def. SMF at ¶ 195; Ridings Decl. at ¶¶ 61-68.

According to Defendant, the impression that Ms. Ridings received from Plaintiff's response was that Plaintiff would come to work, do the job that he was asked to do, but would not go above and beyond. Def. SMF at ¶ 196; Ridings Decl. at ¶¶ 61-68. Ms. Ridings thought that Plaintiff's answer was okay and deserved a 3. Def. SMF at ¶ 197; Ridings Decl. at ¶¶ 61-68. In contrast to Plaintiff's response, Mr. Powell's answer to Question No. 3 included, "arriving 15-20 [minutes] early," "giving customers [the] service [that] you expect," and "doing [the] right thing when no one is looking." Def. SMF at ¶ 198; Ridings Decl. at ¶¶ 61-68. The impression

that Ms. Ridings received from Mr. Powell's response was that he would show up early to prepare for each day and engage customers. Def. SMF at ¶ 199; Ridings Decl. at ¶¶ 61-68.

In response to Question 4, Mr. Kshywonis' answer defined work ethic as "honesty, fairness, and hard work." Def. SMF at ¶ 200; Ridings Decl. at ¶¶ 61-68. Ms. Ridings thought that Mr. Kshywonis' answer demonstrated valuable qualities when working with taxpayer money. Def. SMF at ¶ 201; Ridings Decl. at ¶¶ 61-68. Ms. Blunt's answer to Question 4 included stating that "work gets done when it gets done," that she will "work as long as it takes," and that she "finishes 1st time to get job done correctly." Def. SMF at ¶ 202; Ridings Decl. at ¶¶ 61-68. The impression that Ms. Ridings received from Ms. Blunt's answer was that she would work as long as it took to finish a job and put in extra effort. Def. SMF at ¶ 203; Ridings Decl. at ¶¶ 61-68. While Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 4, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶¶ 195-96, 198, 200, 202; Ridings Dep. at 16-18, 29-31, 35.

Question No. 5 of the first-round interview asked: "What is the primary focus for anyone or any service industry business?" Def. SMF at ¶ 204; ROI, Walter Craig

Score Sheet at pp. 138-43. For Question No. 5, Mr. Marlow scored Plaintiff's response a 3, Mr. Powell's response a 4, Mr. Barr's response a 4, Mr. Kshywonis' response a 3, and Ms. Blunt's response a 5. Def. SMF at ¶ 205; Marlow Decl. at ¶ 71. In response to Question No. 5, Mr. Marlow wrote that Plaintiff responded "taking care of the customer – if you don't have a customer[,] you don't have a business." Def. SMF at ¶ 206; Marlow Decl. at ¶ 71.

Mr. Marlow scored Mr. Powell's response higher than Plaintiff's because Mr. Marlow thought that Mr. Powell explained more about how he interacts with customers than Plaintiff did. Def. SMF at ¶ 207; Marlow Decl. at ¶ 71. Based on his notes, Mr. Marlow is unable to ascertain why he scored Mr. Barr's responses to Question No. 5 as a 4. Def. SMF at ¶ 208; Marlow Decl. at ¶ 71. However, all of Mr. Marlow's scores were based on the answers provided by the applicants. Def. SMF at ¶ 209; Marlow Decl. at ¶ 71. Mr. Marlow scored Ms. Blunt's response higher than Plaintiff's because Mr. Marlow thought Ms. Blunt elaborated on her answer more than Plaintiff did. Def. SMF at ¶ 210; Marlow Decl. at ¶ 71.

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 5, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always

write down the full answers to questions. Pl. Resp. SMF at ¶¶ 206, 208-09; Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 5, Mr. Curtis scored Plaintiff's response a 4, Mr. Barr's response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 211; Curtis Decl. at ¶¶ 55-57. For Question No. 5, Ms. Ridings scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Kshywonis' response a 4, Mr. Barr's response a 5, and Ms. Blunt's response a 4. Def. SMF at ¶ 212; Ridings Decl. at ¶¶ 69-72. Based on her notes, Ms. Ridings is unable to ascertain why she scored Mr. Barr's responses to Question No. 5 as a 5. Def. SMF at ¶ 213; Ridings Decl. at ¶¶ 69-72. However, all of Ms. Ridings' scores were based on the answers provided by the applicants. Def. SMF at ¶ 214; Ridings Decl. at ¶¶ 69-72.

Question No. 6 of the first-round interview asked: "What would you do to provide excellent customer service in a call center environment?" Def. SMF at ¶ 215; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 6, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Barr's response a 4, Mr. Kshywonis' response a 5, and Ms. Blunt's response a 5. Def. SMF at ¶ 216; Marlow Decl. at ¶ 72. In response to Question No. 6, Mr. Marlow wrote that Plaintiff responded, "be polite on the telephone," "ask questions to make sure [you are] understood," and help "resolve their complaint." Def. SMF at ¶ 217; Marlow Decl. at ¶ 72.

Mr. Marlow scored Mr. Kshywonis' response higher than Plaintiff's because Mr. Marlow thought Mr. Kshywonis elaborated on the personal side of non-visual communication when he stated "[p]eople can tell when you are smiling." Def. SMF at ¶ 218; Marlow Decl. at ¶ 72. Mr. Marlow scored Ms. Blunt's response higher than Plaintiff's because Mr. Marlow thought Ms. Blunt also elaborated on the personal side of non-visual communication when she stated "[a] smile shines through the phone." Def. SMF at ¶ 219; Marlow Decl. at ¶ 72.

While Plaintiff does not specifically dispute that Mr. Marlow has explained these reasons for his scores on Question 6, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 217-18; Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 6, Mr. Curtis scored Plaintiff's response a 4, Mr. Barr's response a 4, and Ms. Blunt's response a 5. Def. SMF at ¶ 220; Curtis Decl. at ¶¶ 58-62. Mr. Curtis wrote that Plaintiff responded to Question No. 6 by stating, "be polite," "ask questions," and "try and solve the problem." Def. SMF at ¶ 221; Curtis Decl. at ¶¶ 58-62. Ms. Blunt responded to Question No. 6 by stating, "voice makes a difference," "a smile shines through," "tone of confidence," and "stay genuine to who you are." Def. SMF at ¶ 222; Curtis Decl. at ¶¶ 58-62. Mr. Curtis scored Ms.

Blunt's response higher than Plaintiff's because he thought Ms. Blunt's answer was exceptional, more complex than Plaintiff's answer, and one of the best answers to this question that he had ever heard. Def. SMF at ¶ 223; Curtis Decl. at ¶¶ 58-62.

For Question No. 6, Ms. Ridings scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Kshywonis' response a 4, Mr. Barr's response a 4, and Ms. Blunt's response a 5. Def. SMF at ¶ 224; Ridings Decl. at ¶¶ 74-79. In response to Question No. 6, Ms. Ridings wrote that Plaintiff answered, "[be] polite on phone," "greet them," "ask questions," "understand them," "resolve problems." Def. SMF at ¶ 225; Ridings Decl. at ¶¶ 74-79. Ms. Blunt responded to Question No. 6 by stating, "voice makes difference," "smile shines through phone," "show customer you know subject matter," and "be patient and stay genuine to self – want customer to know you are there." Def. SMF at ¶ 226; Ridings Decl. at ¶¶ 74-79.

According to Ms. Ridings, she thought while Plaintiff provided a good answer, Ms. Blunt's answer was more descriptive. Def. SMF at ¶ 227; Ridings Decl. at ¶¶ 74-79. While Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 4, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶ 226 (responding to Def. SMF at ¶ 227); Ridings Dep. at 16-18, 29-31, 35.

Question No. 7 of the first-round interview asked: "Have you worked for a company who sought services from outside commercial vendors, if so please describe how you managed the relationship?" Def. SMF at ¶ 228; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 7, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 5, Mr. Barr's response a 4, Mr. Kshywonis' response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 229; Marlow Decl. at ¶ 73. In response to Question No. 7, Mr. Marlow thought Plaintiff only explained the process of maintenance but did not elaborate on how he managed relationships with outside commercial vendors. Def. SMF at ¶ 230; Marlow Decl. at ¶ 73.

According to Mr. Marlow, he scored Mr. Powell's response higher than Plaintiff's because he thought Mr. Powell explained how he managed relationships with outside commercial vendors. Def. SMF at ¶ 231; Marlow Decl. at ¶ 73. While Plaintiff does not specifically dispute that Mr. Marlow stated that was his reason for giving Mr. Powell a higher than Plaintiff score on Question 7, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 229-30; Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 7, Mr. Curtis scored Plaintiff's response a 3, Mr. Barr's response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 232; Curtis Decl. at

¶¶ 63-67. Mr. Curtis does not think Plaintiff fully answered the question in that he did not describe how he managed previous relationships with outside commercial vendors, while Mr. Barr, on the other hand, gave specific examples of how he managed relationships with outside vendors. Def. SMF at ¶¶ 233-34; Curtis Decl. at ¶¶ 63-67. In Mr. Curtis's opinion, Ms. Blunt did a better job than Plaintiff in explaining the role of being a middleman between a company and the government in a repair situation. Def. SMF at ¶ 235; Curtis Decl. at ¶¶ 63-67.

For Question No. 7, Ms. Ridings scored Plaintiff's response a 3, Mr. Powell's response a 4, Mr. Kshywonis' response a 4, Mr. Barr's response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 236; Ridings Decl. at ¶¶ 79-87. Ms. Ridings did not feel that Plaintiff's response to Question No. 7 addressed how Plaintiff had managed previous relationships with outside commercial vendors. Def. SMF at ¶ 237; Ridings Decl. at ¶¶ 79-87. Ms. Ridings thought Mr. Powell's answer described how he had managed previous relationships with outside commercial vendors. Def. SMF at ¶ 238; Ridings Decl. at ¶¶ 79-87. Specifically, Mr. Powell stated that he had "treat[ed] them as internal customers," "maintain[ed] professionalism," and "ma[de] sure they [did] what they [were] supposed to do." Def. SMF at ¶ 239; Ridings Decl. at ¶¶ 79-87.

Based on her notes, Ms. Ridings is unable to ascertain why she scored Mr. Kshywonis' responses to Question No. 7 as a 4. Def. SMF at ¶ 240; Ridings Decl.

33

at ¶¶ 79-87. However, all of Ms. Ridings' scores were based on the answers provided by the applicants. Def. SMF at ¶ 241; Ridings Decl. at ¶¶ 79-87.

Ms. Ridings also thought that Ms. Blunt's answer to Question 7 described how she had managed previous relationships with outside commercial vendors. Def. SMF at ¶ 242; Ridings Decl. at ¶¶ 79-87. Specifically, Ms. Blunt stated that she had acted as a "liaison" and "work[ed] toward solution[s] for satisfaction." Def. SMF at ¶ 243; Ridings Decl. at ¶¶ 79-87. Again, while Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 7, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶¶ 236-37, 240; Ridings Dep. at 16-18, 29-31, 35.

Question No. 8 of the first-round interview asked: "How does one manage data, and what is the importance of managing data?" Def. SMF at ¶ 244; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 8, Mr. Marlow scored Plaintiff's response a 3, Mr. Powell's response a 4, Mr. Barr's response a 4, Mr. Kshywonis' response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 245; Marlow Decl. at ¶ 74. In response to Question No. 8, Mr. Marlow thought Plaintiff focused his answer on analyzing reports. Def. SMF at ¶ 246; Marlow Decl. at ¶ 74. Mr. Marlow scored Mr. Powell's response higher than Plaintiff's because Mr. Marlow thought Mr.

Powell discussed managing data by "inspecting what you expect" and "look[ing] at performance goals." Def. SMF at ¶ 247; Marlow Decl. at ¶ 74. Mr. Marlow scored Mr. Barr's response higher than Plaintiff's because Mr. Marlow thought Mr. Barr discussed managing data through "systems" and analyzing "trend[s]." Def. SMF at ¶ 248; Marlow Decl. at ¶ 74.

Mr. Marlow scored Mr. Kshywonis' response higher than Plaintiff's because Mr. Marlow thought Mr. Kshywonis discussed managing data through "spreadsheets," "excel," and "electronic organization." Def. SMF at ¶ 249; Marlow Decl. at ¶ 74. Mr. Marlow scored Ms. Blunt's response higher than Plaintiff's because Mr. Marlow thought Ms. Blunt discussed about how managing data depends on the types of systems being used. Def. SMF at ¶ 250; Marlow Decl. at ¶ 74. Again, while Plaintiff does not specifically dispute that Mr. Marlow stated these reasons for his scores on Question 8, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 245-52;[4] Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

---

[4] Starting with Plaintiff's paragraph 246 of his response to Defendant's Statement of Facts, Plaintiff's numbered paragraphs in his response again do not correspond to Defendant's numbered paragraphs. *See* Pl. Resp. SMF [54-2] at ¶¶ 246-308. The

For Question No. 8, Mr. Curtis scored Plaintiff's response a 3, Mr. Barr's response a 4, and Ms. Blunt's response a 3. Def. SMF at ¶ 251; Curtis Decl. at ¶¶ 69-72. Mr. Curtis thought Mr. Barr's answer to Question No. 8 was more in-depth than Plaintiff's. Def. SMF at ¶ 252; Curtis Decl. at ¶¶ 69-72. Specifically, Mr. Barr discussed using data systems to keep up with data history and analyze data and discussed how data was the best prediction tool. Def. SMF at ¶¶ 253-54; Curtis Decl. at ¶¶ 69-72.

For Question No. 8, Ms. Ridings scored Plaintiff's response a 3, Mr. Powell's response a 4, Mr. Kshywonis' response a 5, Mr. Barr's response a 5, and Ms. Blunt's response a 4. Def. SMF at ¶ 255; Ridings Decl. at ¶¶ 87-95. Ms. Ridings wrote that Plaintiff in his response talked about receiving "weekly, daily, and monthly" "reports" and "analyz[ing] reports." Def. SMF at ¶ 256; Ridings Decl. at ¶¶ 87-95. Based on her notes, Ms. Ridings did not think Plaintiff discussed the importance of managing data, while Mr. Powell discussed the importance of managing data. Def. SMF at ¶¶ 257-58; Ridings Decl. at ¶¶ 87-95. Specifically, Mr. Powell stated that managing data allows employees to "[be] prepare[d] for [the] day," "look at

_____

Court nevertheless has considered Plaintiff's responses as if they were properly numbered.

performance goals," "manage overtime," and "consolidate and disseminate [data] appropriately." Def. SMF at ¶ 259; Ridings Decl. at ¶¶ 87-95.

Based on her notes, Ms. Ridings thought Mr. Kshywonis also discussed the importance of managing data. Def. SMF at ¶ 260; Ridings Decl. at ¶¶ 87-95. Specifically, Mr. Kshywonis stated that data was managed through "spreadsheets" and "electronic organization" and that the importance of managing data is that it "makes it easier than looking through stacks of paper." Def. SMF at ¶ 261; Ridings Decl. at ¶¶ 87-95. Based on her notes, Ms. Ridings thought Mr. Barr discussed the importance of managing data. Def. SMF at ¶ 262; Ridings Decl. at ¶¶ 87-95. Specifically, Mr. Barr stated that managing data allowed for "trend analysis" and stated that data is a "prediction tool[]" and the "best tool in his line of work." Def. SMF at ¶ 263; Ridings Decl. at ¶¶ 87-95.

Based on her notes, Ms. Ridings thought Ms. Blunt also discussed the importance of managing data. Def. SMF at ¶ 264; Ridings Decl. at ¶¶ 87-95. Specifically, Ms. Blunt stated that it is important to manage data because it "make[s] sure [that] services are completed and passengers are safe." Def. SMF at ¶ 265; Ridings Decl. at ¶¶ 87-95. Again, while Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 8, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from

the time period's interviews." Pl. Resp. SMF at ¶¶ 259-60 (responding to Def. SMF at ¶¶ 257-58), 262-66 (responding to Def. SMF at ¶¶ 260-64); Ridings Dep. at 16-18, 29-31, 35.

Question No. 9 of the first-round interview asked: "When spending money what do you look for before purchasing a product?" Def. SMF at ¶ 266; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 9, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Barr's response a 5, Mr. Kshywonis' response a 3, and Ms. Blunt's response a 4. Def. SMF at ¶ 267; Marlow Decl. at ¶ 75. In response to Question No. 9, Mr. Marlow thought Plaintiff focused his answer on quality versus price. Marlow Def. SMF at ¶ 268; Marlow Decl. at ¶ 75.

Mr. Marlow scored Mr. Barr's response higher than Plaintiff's because Mr. Marlow thought Mr. Barr went beyond discussing just quality versus price and included a discussion on the "vendor" and "reputation." Def. SMF at ¶ 269; Marlow Decl. at ¶ 75. Again, while Plaintiff does not specifically dispute that Mr. Marlow stated this reason for his scores on Question 9, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 270-71 (responding to Def. SMF at ¶¶ 268-69); Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 9, Mr. Curtis scored Plaintiff's response a 3, Mr. Barr's response a 4, and Ms. Blunt's response a 3. Def. SMF at ¶ 270; Curtis Decl. at ¶¶ 73-77. Mr. Curtis thought Plaintiff gave a limited response that revolved around price versus quality while Mr. Barr provided an expansive answer that discussed aspects such as the product and manufacturer reputation and the quality of any warranty. Def. SMF at ¶¶ 271-72; Curtis Decl. at ¶¶ 73-77. Mr. Curtis thought Mr. Barr's answer was more developed than Plaintiff's. Def. SMF at ¶ 273; Curtis Decl. at ¶¶ 73-77.

For Question No. 9, Ms. Ridings scored Plaintiff's response a 3, Mr. Powell's response a 5, Mr. Kshywonis' response a 4, Mr. Barr's response a 5, and Ms. Blunt's response a 3. Def. SMF at ¶ 274; Ridings Decl. at ¶¶ 97-103. Plaintiff responded to Question No. 9 by stating, "quality – before purchasing any product compare costs" and "who sells what and does what." Def. SMF at ¶ 275; Ridings Decl. at ¶¶ 97-103. Ms. Ridings found Plaintiff's answer to be surface level and without depth. Def. SMF at ¶ 276; Ridings Decl. at ¶¶ 97-103.

In responding to Question No. 9, Mr. Powell discussed the quality and cost. Def. SMF at ¶ 277; Ridings Decl. at ¶¶ 97-103. Mr. Powell also noted the importance of "maximiz[ing] spending power" and noted the additional consideration of "time." Def. SMF at ¶ 278; Ridings Decl. at ¶¶ 97-103. Mr. Powell's answer gave Ms. Ridings the impression that Mr. Powell would perform his due diligence prior to

making any financial decision on behalf of the Federal Government. Def. SMF at ¶ 279; Ridings Decl. at ¶¶ 97-103. Mr. Barr also discussed cost and quality. Def. SMF at ¶ 280; Ridings Decl. at ¶¶ 97-103. Additionally, Mr. Barr stated that the "cheapest [product is] not always [the] best answer" and added that additional considerations were the vendor's "reputation" and the "warranty." Def. SMF at ¶ 281; Ridings Decl. at ¶¶ 97-103. Finally, Mr. Barr stated that he "does not like wasting taxpayer dollars." Def. SMF at ¶ 282; Ridings Decl. at ¶¶ 97-103. Mr. Barr's answer left Ms. Ridings with the impression that Mr. Barr would do the research necessary to get the best value for the government. Def. SMF at ¶ 283; Ridings Decl. at ¶¶ 97-103.

Based on her notes, Ms. Ridings is unable to ascertain why she scored Mr. Kshywonis' responses to Question No. 9 as a 4. Def. SMF at ¶ 284; Ridings Decl. at ¶¶ 97-103. However, all of Ms. Ridings' scores were based on the answers provided by the applicants. Def. SMF at ¶ 285; Ridings Decl. at ¶¶ 97-103. Again, while Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 9, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's interviews." Pl. Resp. SMF at ¶¶ 277-78 (responding to Def. SMF at ¶¶ 275-76), 281, 285 (responding to Def. SMF at ¶¶ 279, 283); Ridings Dep. at 16-18, 29-31, 35.

40

Question No. 10 of the first-round interview asked: "What distinguishes you from the other candidates?" Def. SMF at ¶ 286; ROI, Walter Craig Score Sheet at pp. 138-43. For Question No. 10, Mr. Marlow scored Plaintiff's response a 4, Mr. Powell's response a 4, Mr. Barr's response a 4, Mr. Kshywonis' response a 5, and Ms. Blunt's response a 5. Def. SMF at ¶ 287; Marlow Decl. at ¶ 77. In response to Question No. 10, Mr. Marlow thought Plaintiff stated his résumé. Def. SMF at ¶ 288; Marlow Decl. at ¶ 77.

Mr. Marlow scored Mr. Kshywonis response higher than Plaintiff's on Question 10 because Mr. Marlow thought Mr. Kshywonis provided information about himself that was directly relevant to working in a call center Def. SMF at ¶ 289; Marlow Decl. at ¶ 77. Mr. Marlow scored Ms. Blunt's response higher than Plaintiff's because Mr. Marlow thought Ms. Blunt provided information that allowed the interview panelists to know more about her as a person and why she was a better applicant. Def. SMF at ¶ 290; Marlow Decl. at ¶ 77. Again, while Plaintiff does not specifically dispute that Mr. Marlow stated this reason for his scores on Question 10, Plaintiff contends that the "record does not support these facts" because Mr. Marlow testified that he did not recall anything about the interviews and relied on his notes, and he stated that he did not always write down the full answers to questions. Pl. Resp. SMF at ¶¶ 290-92 (responding to Def. SMF at ¶¶ 288-90); Marlow Decl. at ¶ 61; Marlow Dep. at 20, 23; ROI at 138-39.

For Question No. 10, Mr. Curtis scored Plaintiff's response a 4, Mr. Barr's response a 4, and Ms. Blunt's response a 4. Def. SMF at ¶ 291; Curtis Decl. at ¶¶ 78-80.

For Question No. 10, Ms. Ridings scored Plaintiff's response a 4, Mr. Powell's response a 5, Mr. Kshywonis' response a 5, Mr. Barr's response a 5, and Ms. Blunt's response a 5. Def. SMF at ¶ 292; Ridings Decl. at ¶¶ 105-111. Ms. Ridings wrote that Plaintiff responded to Question No. 10 by reiterating his training, experience with customers, education, and experience as a "Warrant Officer." Def. SMF at ¶ 293; Ridings Decl. at ¶¶ 105-111. Ms. Ridings did not think Plaintiff's answer distinguished him from other candidates. Def. SMF at ¶ 294; Ridings Decl. at ¶¶ 105-111.

Mr. Powell responded to Question 10 by stating that he "loves to be [the] subject matter expert." Def. SMF at ¶ 295; Ridings Decl. at ¶¶ 105-111. Mr. Powell further responded that he is a professional but "will not overstep his boundaries" and that he could be confident without being over-confident. Def. SMF at ¶ 296; Ridings Decl. at ¶¶ 105-111. Based on her notes, Ms. Ridings thought Mr. Powell's answer deserved a 5. Def. SMF at ¶ 297; Ridings Decl. at ¶¶ 105-111. Mr. Kshywonis answered Question No. 10 by stating that he was a hard worker, who works in his free time, and enjoys challenging himself. Def. SMF at ¶ 298; Ridings Decl. at ¶¶ 105-111. Mr. Kshywonis also discussed his experience in customer service roles,

specifically his previous experience working in a call center. Def. SMF at ¶ 299; Ridings Decl. at ¶¶ 105-111. Based on her notes, Ms. Ridings thought Mr. Kshywonis' answer also deserved a 5. Def. SMF at ¶ 300; Ridings Decl. at ¶¶ 105-111.

Mr. Barr responded to Question No. 10 by noting his 25 years of experience in fleet management. Def. SMF at ¶ 301; Ridings Decl. at ¶¶ 105-111. Mr. Barr described himself as "results driven," able to "make sound decisions under pressure," and as having sound technical experience. Def. SMF at ¶ 302; Ridings Decl. at ¶¶ 105-111. Based on her notes, Ms. Ridings also thought Mr. Barr's answer deserved a 5. Def. SMF at ¶ 303; Ridings Decl. at ¶¶ 105-111. Ms. Blunt responded to Question No. 10 by stating that she was "goal driven" and "ma[de] sure [the] job [was] done correctly." Def. SMF at ¶ 304; Ridings Decl. at ¶¶ 105-111. Ms. Blunt further stated that she was a perfectionist in completing her work and that she also "likes to have fun at work." Def. SMF at ¶ 305; Ridings Decl. at ¶¶ 105-111. Based on her notes, Ms. Ridings thought Ms. Blunt's answer deserved a 5. Def. SMF at ¶ 306; Ridings Decl. at ¶¶ 105-111.

Again, while Plaintiff does not specifically dispute that Ms. Ridings has explained these reasons for her scores on Question 10, Plaintiff contends that, during her deposition, Ms. Ridings "stated that she had no specific recollection of any of the events related to Mr. Craig (or any other candidate from the time period's

interviews." Pl. Resp. SMF at ¶¶ 296-97, 299, 302 (responding to Def. SMF at ¶¶ 294-95, 297, 300); Ridings Dep. at 16-18, 29-31, 35.

According to Defendant, none of the scores that Mr. Marlow, Mr. Curtis, or Ms. Ridings gave to Plaintiff, Mr. Powell, Mr. Kshywonis, Mr. Barr, or Ms. Blunt was impacted by the applicants' age, race, or sex. Def. SMF at ¶¶ 307-09; Marlow Decl. at ¶¶ 78-80; Curtis Decl. at ¶ 80; Ridings Decl. at ¶ 112. Defendant contends that Mr. Marlow, the selecting official, ultimately selected Mr. Barr, Mr. Powell, Mr. Kshywonis, and Ms. Blunt to fill the Vacancy Announcement because he thought they performed the best at the second-round interview. Def. SMF at ¶ 310; Marlow Decl. at ¶ 54. Mr. Marlow selected Mr. Barr, Mr. Powell, Mr. Kshywonis, and Ms. Blunt to fill the equipment specialist positions because—based on their interviews and interview scores—he thought that they were the best applicants for the position. Def. SMF at ¶ 311; Marlow Decl. at ¶ 54.

Defendant contends that Plaintiff was not selected for a second-round interview because other candidates performed better during the first-round interview and received higher scores during the first-round interview. Def. SMF at ¶¶ 312-13; Marlow Decl. at ¶¶ 43-53. Mr. Marlow did not at any time consider any applicants' race, sex, or age as a factor in deciding who to select for the equipment specialist positions. Def. SMF at ¶¶ 314-16; Marlow Decl. at ¶¶ 78-80.

Plaintiff is 16 years older than John Marlow (the selecting official), 13 years older than Christopher Curtis, and over 20 years older than Julie Ridings. Pl. SMF at ¶ 5; ROI at p. 4. Plaintiff is 21 years older than Nathan Barr; 23 years older than Harold Powell; 36 years older than Eric Kshywonis; and 39 years older than LaTonya Blunt. Pl. SMF at ¶ 7.

Plaintiff was asked questions for fifteen minutes before the "official" start of his interview, and he described his 35-40 years of mechanical maintenance and teaching, training and supervising to the interview panel. Pl. SMF at ¶ 9-10. Mr. Marlow asked Plaintiff about whether he was familiar with a product campaign and warranties, to which Plaintiff explained how his experience with GM dealt with product campaigns and warranties. Pl. SMF at ¶¶ 12-13. When Plaintiff reviewed the panel's interview notes he observed that they did not write down any of the information from his introductory description of his past experience and the various ways in which it related to the position for which he was applying. Pl. SMF at ¶ 14.

Plaintiff had nearly 20 years more work experience than Mr. Barr, as well as a higher level of education than Mr. Barr. Pl. SMF at ¶ 17; ROI at pp. 27-29. Plaintiff had nearly 36 years more work experience than Ms. Blunt, as well as work experience more directly related to the technical aspects of the position. Pl. SMF at ¶ 18; ROI at pp. 27-29; 155-61. According to Plaintiff, Ms. Blunt did not even meet the minimum qualifications for the position as described by Defendant's own job

description. Pl. SMF at ¶ 19; ROI at pp. 23-26 (requiring specialized experience such as "determining equipment maintenance, restoration, or repair needs"). Plaintiff had 33 years more work experience than Mr. Kshywonis, as well as a higher level of education than Mr. Kshywonis. Pl. SMF at ¶ 20; ROI at pp. 27-29, 168-72. Plaintiff had nearly 20 years more work experience than Mr. Powell, as well as a higher level of education than Mr. Powell. Pl. SMF at ¶ 21; ROI at pp. 27-29, 179-81.

In the Second Amended Complaint [26], Plaintiff alleges that he filed an "Equal Employment Opportunity" complaint and was granted a right to sue by the U.S. Equal Employment Opportunity Commission. Sec. Am. Compl. [26] at ¶ 14. He alleges that he timely filed his Complaint within ninety days of receiving his Notice of Right to Sue and has met all jurisdictional prerequisites to filing suit in this action. *Id*. at ¶ 15.

## II.   DISCUSSION

### A.   *Summary Judgment Standard*

Summary judgment is authorized when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 175 (1970); *Bingham, Ltd. v. United States*, 724

F.2d 921, 924 (11th Cir. 1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 242. Moreover, for factual issues to be genuine, they must have a real basis

in the record. *Matsushita*, 475 U.S. at 587. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259.

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson*, 477 U.S. at 249; *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

B.   *Plaintiff's Claims*

In the Second Amended Complaint [26], Plaintiff asserts three counts, all arising from the GSA's failure to select him for one of the equipment specialist

positions advertised in the Vacancy Announcement. In Count I, Plaintiff alleges that Defendant discriminated against him on the basis of race, in violation of Title VII. Sec. Am. Compl. [26] at ¶¶ 16-18. In Count II, Plaintiff alleges that Defendant discriminated against him on the basis of sex, in violation of Title VII. *Id*. at ¶¶ 19-21. In Count III, Plaintiff alleges that Defendant discriminated against him on the basis of his age, in violation of the ADEA. *Id*. at ¶¶ 22-24.

### 1.    Race and Sex Discrimination

#### a.    Standards of Proof under Title VII

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII claim for discrimination based on disparate treatment, a plaintiff must prove that the defendant acted with discriminatory intent. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980-81 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir. 1983). Discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019).

Direct evidence is evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Evidence, Black's Law Dictionary* 596 (8th ed. 2004); *see also Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993); *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). Only the most blatant remarks whose intent could only be to discriminate constitute direct evidence. *Clark*, 990 F.2d at 1226; *Carter*, 870 F.2d at 581. Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence. *See Harris v. Shelby Cty. Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996). "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641–42 (11th Cir. 1998).

Evidence that merely "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081–82 (11th Cir. 1990). Because direct evidence of discrimination is seldom available, a plaintiff must typically rely on circumstantial evidence to prove discriminatory intent, which can be done using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997), *abrogated on other grounds by Lewis*, 918 F.3d at 1226; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997). Under this framework, a plaintiff is first required to create an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310, *reh'g denied and opinion superseded in part*, 151 F.3d 1321 (11th Cir. 1998); *Combs*, 106 F.3d at 1527.

Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Jones*, 137 F.3d at 1310–11; *Holifield*, 115 F.3d at 1562; *see Burdine*, 450 U.S. at 253–54. Once the plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Jones*, 137 F.3d at 1310. If the defendant carries this burden and explains its rationale, the plaintiff must then show that the proffered reason is merely a pretext for discrimination. *See Burdine*, 450 U.S. at 253–54; *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

A plaintiff is entitled to survive a defendant's motion for summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of

material fact regarding the truth of the employer's proffered reasons for its actions. *Combs*, 106 F.3d at 1529. A *prima facie* case along with sufficient evidence to reject the employer's explanation is all that is needed to permit a finding of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Combs*, 106 F.3d at 1529.

The *McDonnell Douglas* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987). The Eleventh Circuit has held that this framework of shifting burdens of proof is a valuable tool for analyzing evidence in cases involving alleged disparate treatment, but the framework is only a tool. *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir. 1984), *abrogated on other grounds by Lewis*, 918 F.3d at 1226. Indeed, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

A plaintiff may also defeat a motion for summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted). The Eleventh Circuit has held that a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith*, 644 F.3d at 1328). "Even without similarly situated comparators," a plaintiff will survive summary judgment if they present a convincing mosaic of circumstantial evidence from which a factfinder can infer discriminatory motivation. *Lewis*, 934 F.3d at 1185. The plaintiff retains the ultimate burden of proving that the defendant is guilty of intentional discrimination. *Burdine*, 450 U.S. at 253.

b.      Plaintiff's *Prima Facie* Case

In this case, Plaintiff does not argue, nor has he cited to any record evidence, that he has presented direct evidence that anyone at the GSA intended to discriminate him based on his race or sex. Indeed, Plaintiff admits that throughout the application and first-round interview process, no GSA employee mentioned, referenced, or made any comment regarding Plaintiff's race or sex. Def. SMF at ¶¶ 132-33. Thus, Plaintiff's claims of race and sex discrimination are based on circumstantial evidence and must be analyzed under the *McDonnell Douglas-Burdine* framework

set forth above. Under that framework, Plaintiff must first present sufficient evidence to establish a *prima facie* case of discrimination.

A plaintiff can generally establish a *prima facie* case of unlawful discrimination under Title VII by showing that: (1) he is a member of a protected class, (2) he was subjected to an adverse employment action by the employer, (3) he was qualified to do the job in question, and (4) the employer treated similarly situated employees outside his protected classification (*i.e.*, those of a different race or sex) more favorably than it treated him. *See McDonnell Douglas*, 411 U.S. at 802; *see also Wright v. Southland Corp.*, 187 F.3d 1287, 1290 (11th Cir. 1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

More specifically, in order to establish a *prima facie* case of a discriminatory failure to hire, a plaintiff typically must demonstrate that: (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position remained open or was filled by another person outside of his protected class. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999); *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir. 1987) (*per curiam*).

In this case, Defendant concedes that Plaintiff has presented sufficient evidence to establish the first, second, and third prongs of his *prima facie* case for

his claims of race discrimination and sex discrimination. Def. Br. [51-1] at 5, 13. Defendant nevertheless argues that, for two of the four equipment specialist positions, Plaintiff cannot establish a *prima facie* case of race discrimination, and for three of the four equipment specialist positions, Plaintiff cannot establish a *prima facie* case of sex discrimination. *Id*. at 5-6, 13-14.

As set forth above, the successful applicants who were selected for the equipment specialist positions were Nathan Barr, a white male; Eric Kshywonis, a white male; Harold Powell, an African American male; and LaTonya Blunt, an African American female. Def. SMF at ¶¶ 38-42; Pl. SMF at ¶¶ 7-8. Thus, Defendant argues, Plaintiff, who is African American, cannot establish a *prima facie* case of race discrimination based on the positions that were filled by Mr. Powell and Ms. Blunt because it is undisputed that they are in the same protected class as Plaintiff. Def. Br. at 5-6. Similarly, Defendant argues, Plaintiff, who is male, cannot establish a *prima facie* case of sex discrimination based on the positions that were filled by Mr. Barr, Mr. Kshywonis, or Mr. Powell, because it is undisputed that they are in the same protected class as Plaintiff. Def. Br. at 13-14.

Plaintiff does not respond specifically to this argument, except to argue that he has presented a *prima facie* case of both race and sex discrimination. *See* Pl. Br. [54-1] at 5 ("Here there is no dispute about the prima facie case as Plaintiff is an African-American man who suffered a tangible action through the failure to promote

him to a position that he was qualified for, applied for, was rejected from in spite of his qualifications and which went to someone who was not a member of his protected class."). Plaintiff appears to be correct that there really "is no dispute" about the *prima facie* case because Defendant concedes that Plaintiff has presented a *prima facie* case of both race and sex discrimination as to at least one of the equipment specialist positions that were filled by the Vacancy Announcement. For the two positions that were filled by Mr. Barr and Mr. Kshywonis, both white men, Defendant concedes that Plaintiff has presented a *prima facie* case of race discrimination. Def. Br. at 5-6. For the position that was filled by Ms. Blunt, an African American female, Defendant concedes that Plaintiff has presented a *prima facie* case of sex discrimination. *Id*. at 13-14.

Thus, because the Plaintiff has presented a *prima facie* case of both race and sex discrimination, the burden shifts to Defendant to present a legitimate reason for the decision to select Mr. Barr, Mr. Kshywonis, and Ms. Blunt for the equipment specialist positions instead of the Plaintiff that was not related to the Plaintiff's race or sex.

### c.      Defendant's Legitimate Reason

The Plaintiff does not appear to dispute that Defendant has presented sufficient evidence that Mr. Marlow had an alleged legitimate reason for selecting Mr. Barr, Mr. Kshywonis, and Ms. Blunt for the equipment specialist positions over

Plaintiff. *See* Pl. Br. at 7 ("Defendant offers as its legitimate nondiscriminatory reason for not selecting Plaintiff that Plaintiff needed to work on his customer service skills"). The facts surrounding the selection process are set forth in detail above. In sum, Defendant has presented evidence that, although Plaintiff was selected as one of the "best qualified" applicants and was given a first-round interview, the scores he received for his responses to the questions during that interview were not high enough for him to move to the second round of interviews.

Defendant contends that Mr. Marlow, the selecting official, ultimately selected Mr. Barr, Mr. Powell, Mr. Kshywonis, and Ms. Blunt to fill the Vacancy Announcement because he thought they performed the best at the second-round interview. Def. SMF at ¶ 310; Marlow Decl. at ¶ 54. Mr. Marlow selected Mr. Barr, Mr. Powell, Mr. Kshywonis, and Ms. Blunt to fill the equipment specialist positions because—based on their interviews and interview scores—he thought that they were the best applicants for the position. Def. SMF at ¶ 311; Marlow Decl. at ¶ 54.

According to Defendant, none of the scores that Mr. Marlow, Mr. Curtis, or Ms. Ridings gave to Plaintiff, Mr. Powell, Mr. Kshywonis, Mr. Barr, or Ms. Blunt was influenced by the applicants' age, race, or sex. Def. SMF at ¶¶ 307-09; Marlow Decl. at ¶¶ 78-80; Curtis Decl. at ¶ 80; Ridings Decl. at ¶ 112. Defendant contends that Plaintiff was not selected for a second-round interview because other candidates performed better during the first-round interview and received higher scores during

the first-round interview. Def. SMF at ¶¶ 312-13; Marlow Decl. at ¶¶ 43-53. According to Defendant, Mr. Marlow did not at any time consider any applicants' race, sex, or age as a factor in deciding who to select for the equipment specialist positions. Def. SMF at ¶¶ 314-16; Marlow Decl. at ¶¶ 78-80.

Accordingly, the Court finds that Defendant has presented sufficient evidence that the GSA had a reason to select the other candidates over Plaintiff that was not based on the Plaintiff's race or sex. To defeat Defendant's Motion for Summary Judgment, Plaintiff must present evidence that Defendant's reasons were a mere pretext to disguise unlawful discrimination.

### d.    Pretext

A plaintiff may carry the burden of showing that the employer's proffered reasons are pretextual by showing that they have no basis in fact, that they were not the true factors motivating the decision, or that the stated reasons were insufficient to motivate the decision. A plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or show indirectly that the employer's ultimate justification is not believable. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1522 (11th Cir. 1991). In other words, a plaintiff must come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the

reasons given by the employer were not the real reasons for the adverse employment decision. *Burdine*, 450 U.S. at 256; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

A plaintiff may carry the burden of establishing pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). If the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each reason. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc*). Moreover, to establish that the employer's reasons were pretextual, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. Cty. Comm. of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Specifically, in employment discrimination cases involving a claim based on a failure to hire or failure to promote, when an employer's proffered reason for selecting another applicant over the plaintiff is that the person selected for the position was more qualified, and the plaintiff attempts to present evidence of pretext

by establishing that he or she was more qualified than the person selected for the position at issue, the Eleventh Circuit has held that:

> [A] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [candidate] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.

*Brooks*, 446 F.3d at 1163 (internal quotation marks omitted); *see also Chapman v. A.I. Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (a plaintiff cannot successfully establish pretext "by simply quarreling with the wisdom of that reason").

Thus, when an employer has presented evidence that the person promoted had superior qualifications to the plaintiff, and the plaintiff attempts to establish pretext by challenging that reason and establishing that the plaintiff had superior qualifications, the plaintiff may not merely present his own opinion that his qualifications were superior; instead, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper v. Southern Co.*, 390 F. 3d 695, 732 (11th Cir. 2004)); *see*

*also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (*per curiam*) (approving this language from *Cooper* as one method of establishing pretext).

Presenting evidence of clearly and significantly superior qualifications is just one way among several that a plaintiff may establish pretext in a failure to promote case. *Walker v. Mortham*, 158 F.3d 1177, 1192-93 (11th Cir. 1998) (a court "may never require a plaintiff to establish that she is more qualified than the successful promotee, let alone impose that requirement at the *prima facie* stage" (emphasis in original)) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) and *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)).[5] As the Supreme Court has explained, a plaintiff may present evidence of pretext in a variety of ways and a court may not require any specific type of evidence to establish pretext:

> Although petitioner retains the ultimate burden of persuasion, our cases make clear that she must also have the opportunity to demonstrate that respondent's proffered reasons for its decision were not its true reasons. In doing so, petitioner is not limited to presenting evidence of a certain type. This is where the District Court erred. The evidence which petitioner can present in an attempt to establish that respondent's stated reasons are pretextual may take a variety of forms. Indeed, she might

---

[5] Although *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) was superseded on other grounds by 42 U.S.C. § 1981(b), its ruling on a plaintiff's burden of establishing pretext has not been overruled and remains binding precedent. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (*per curiam*) (citing *Patterson* for the proposition that a plaintiff "might" seek to demonstrate pretext by establishing that he or she was better qualified than the person promoted).

> seek to demonstrate that respondent's claim to have promoted a better
> qualified applicant was pretextual by showing that she was in fact better
> qualified than the person chosen for the position. The District Court
> erred, however, in instructing the jury that in order to succeed petitioner
> was required to make such a showing. There are certainly other ways
> in which petitioner could seek to prove that respondent's reasons were
> pretextual. Thus, for example, petitioner could seek to persuade the jury
> that respondent had not offered the true reason for its promotion
> decision by presenting evidence of respondent's past treatment of
> petitioner . . . . She may not be forced to pursue any particular means
> of demonstrating that respondent's stated reasons are pretextual. It was,
> therefore, error for the District Court to instruct the jury that petitioner
> could carry her burden of persuasion only by showing that she was in
> fact better qualified than the white applicant who got the job.

*Patterson*, 491 U.S. at 186-88 (emphasis added, internal citations omitted); *see also*

*Walker*, 158 F.3d at 1191-92.

Thus, a plaintiff may present evidence of pretext in a variety of ways that cast

doubt on the employer's proffered reason. Because a plaintiff bears the burden of

establishing that a defendant's reasons are a pretext for discrimination, however, a

plaintiff "must present 'significantly probative' evidence on the issue to avoid

summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.

1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). "Conclusory

allegations of discrimination, without more, are not sufficient to raise an inference

of pretext or intentional discrimination where [a defendant] has offered extensive

evidence of legitimate, non-discriminatory reasons for its actions." *Young*, 840 F.2d

at 830.

In this case, Plaintiff argues that, "[b]ecause there is a factual dispute about the Defendant's proffered reason for not selecting Plaintiff, a jury should determine whether Defendant's actions are pretext for discrimination." Pl. Br. at 7. Further, he argues:

> In a case like this, however, where Defendant has <u>not</u> offered independent evidence that would cause a reasonable jury to conclude that discrimination couldn't have been a motivating factor, a *prima facie* case should be enough to establish pretext when sufficient doubt has been cast as to Defendant's proffered reasons on race and sex discrimination. Further, Plaintiff here can raise a question of fact related to his supreme qualifications for the position at issue that diminish the veracity of defendant's proffered reasons for termination.

*Id*. at 8 (emphasis in original).

It is not entirely clear what Plaintiff means when he argues that "Defendant has <u>not</u> offered independent evidence that would cause a reasonable jury to conclude that discrimination couldn't have been a motivating factor," and Plaintiff does not explain what type of "independent evidence" a Defendant must offer to establish its reasons for the adverse employment decision at issue. Moreover, Plaintiff has cited to no authority supporting his argument that Defendant bears any burden to present "independent evidence" that would cause a reasonable jury to conclude that "discrimination *couldn't have been* a motivating factor." Contrary to Plaintiff's argument, it is not the Defendant's burden to establish that discrimination could *not* have been a motivating factor. Instead, as discussed, it is the Plaintiff who bears the

63

burden to present evidence that Defendant's proffered reason was pretextual and that discrimination was the true reason motivating the decision.[6]

Plaintiff then argues that he has presented sufficient evidence of pretext solely because, in his view, this case "presents the very rare instance in which his qualifications alone are sufficient to establish that he was overqualified for the position and the person selected was underqualified." Pl. Br. at 9. According to Plaintiff, the persons selected for the equipment specialist positions "all had significantly less work experience than Plaintiff—ranging from 21 less years of work experience in the field to 39 less [years] work experience in the field." *Id.*

> Because of the breadth and depth of Mr. Craig's experience, education and training his qualifications for the position leap off of the page in terms of comparing him to the selected candidates. Due to this difference in qualifications, Mr. Craig's case is unique in that it demonstrates a rare case in which his qualifications stand out

---

[6] To the extent Plaintiff's reference to the lack of "independent" evidence refers to his evidentiary legal argument that the "record does not support" the reasons offered by Defendant's witnesses for how they scored the candidates, the Court overrules that objection. *See, e.g.*, Pl. Resp. SMF at ¶¶ 139-43. The witnesses acknowledged that they lacked any unaided personal recollection as to any of the interviews, but then proceeded to offer recollection based on notes that they contemporaneously took of those interviews. *See, e.g.,* Marlow Decl. at ¶¶ 61, *et seq*. Those notes along with the witnesses' testimony as to their recollection based on those notes are in the record. Plaintiff provides no authority for the proposition that Court should disregard this evidence—including recollection refreshed by notes—at this juncture. The Court therefore finds that the evidence "supports" the reasons offered by Defendant for how the scores were assigned.

significantly in comparison to the person selected for the position, who may not have even met the minimum qualifications for the position.

*Id.* at 10.

Thus, Plaintiff's primary argument regarding pretext is that he was simply more "qualified" than the applicants who were selected solely because of his greater number of years of experience in the field of automotive mechanics and automotive maintenance. But as the Eleventh Circuit has made clear, a "plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [individual] who received the position he coveted." *Brooks v. County Comm. of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Instead, a plaintiff who attempts to demonstrate pretext by establishing that he had superior qualifications may not merely present his own opinion that his qualifications were superior; instead, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that *no reasonable person*, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper v. Southern Co.*, 390 F. 3d 695, 732 (11th Cir. 2004)) (emphasis added).

Significantly, Plaintiff has presented very few facts and evidence regarding the specific education, experience, or other qualifications of the successful candidates other than their relative years of experience compared to him. He argues

only that he had more years of experience in the "field." He also argues that Ms. Blunt did not even meet the minimum qualifications for the position as described by Defendant's job description in the Vacancy Announcement. Pl. SMF at ¶ 19; ROI at pp. 23-26. But Plaintiff concedes that the job description contains a statement that a candidate may demonstrate "any combination of education, training and experience" to meet the qualifications, and again, he offers no specific evidence as to what particular qualification Ms. Blunt was lacking or how her past education, training, or experience did not meet the stated requirements of the position. Pl. Br. at 10.

As a result of the Plaintiff's failure to provide detailed information about both his own specific education and experience, as well as those of the successful applicants, he has failed to establish that the disparities between the qualifications of the successful applicants and his qualifications were of such weight and significance that *no reasonable person* could have chosen the other candidates over Plaintiff. Plaintiff contends only that he had many more years of experience in the fields of automotive mechanics or automotive maintenance. But the Defendant has presented evidence—which Plaintiff does not dispute—that the equipment specialist position was not an automotive mechanic position, and that mechanical knowledge was just one aspect of the position.

It is undisputed that the primary responsibility of an equipment specialist is to respond to phone calls via a 1-800 number from customers who have questions about

the GSA fleet or are in a malfunctioning GSA fleet vehicle. Def. SMF at ¶ 14. It is undisputed that equipment specialists are responsible for answering between 60 and 80 phone calls per day, writing purchase orders for repairs, and issuing government credit cards. Def. SMF at ¶ 15. Thus, when selecting equipment specialists, the interview panelists were looking for good customer service skills, the ability to converse over the phone, and mechanical knowledge. Def. SMF at ¶ 16. While Plaintiff argues that he was more qualified simply because of his years of experience related to automotive mechanics, he has presented no evidence indicating that he had any relevant experience related to customer service or responding to customers' problems or questions over the telephone, or relevant to the other duties and responsibilities of the equipment specialist position. Thus, Plaintiff has failed to demonstrate that no reasonable person could have chosen Mr. Barr, Mr. Kshywonis, or Ms. Blunt for the equipment specialist position over him. As a result, Plaintiff cannot establish pretext simply by arguing that he was more qualified than they were for the position.

More importantly, the Plaintiff's effort to establish pretext by pointing to his alleged greater years of experience fails because, as the Defendant argues, Mr. Marlow did not select the other applicants because they had more years of experience than Plaintiff. Instead, as set forth in detail above, the candidates who were chosen for first-round interviews were all determined to meet the "best qualified standard,"

and once the "best qualified" candidates began the interview process, the candidates were ranked based solely on the scores they received on the 10 interview questions that were asked of all candidates. Defendant has shown that, of the 36 applicants who were given first-round interviews, only seven scored higher than 40 on the interview questions, and those seven were offered second-round interviews. While Plaintiff scored well, he did not score above 40 and was ranked 11th out of the 36 applicants. Defendant has offered evidence in the form of the notes taken by the interviewers, and their recollection of their scoring decision based on those notes. Even if the Court disagreed with these decisions, the Court cannot say that they were unreasonable.

Thus, Plaintiff's attempt to demonstrate pretext by arguing that he was more "qualified" does not even address the Defendant's actual proffered reason for selecting Mr. Barr, Mr. Kshywonis, or Ms. Blunt over Plaintiff. And Plaintiff has not remotely shown that no reasonable person could have scored the applicants' answers as these interviewers did.

That is not Plaintiff's only argument regarding pretext, however. Plaintiff also argues that he has presented evidence of pretext because, he contends, the Defendant deviated from its own policy. Pl. Br. at 10. According to Plaintiff, the GSA had a policy of treating all applicants equally in the interview process, but in this case the

panel "deviated" from the policy because he was asked "detailed questions about his lengthy experience that were not asked of other candidates." *Id*. at 11.

This is an odd argument for pretext. In essence, Plaintiff argues that his experience was so great that no reasonable person would have chosen any other candidate, yet the fact that the interviewers asked questions about that experience was evidence of racial and/or gender discrimination. In any event, Plaintiff cites no evidence to support his theory that asking Plaintiff about his experience was a deviation from any procedure. It is undisputed that, at the beginning of the first-round interviews, applicants were asked to "tell us about yourself," and they were also asked what they knew about the GSA or the GSA fleet. Def. SMF at ¶¶ 105-06. Plaintiff's experience—which Plaintiff himself believes was his chief attribute—was clearly within the scope of the very broad subject potentially implicated by this question. Thus, Plaintiff has not cited to any record evidence suggesting that the GSA "deviated" from its policy by asking him more "detailed questions" about his experience that were not asked of other candidates.

Finally, Plaintiff argues that he has presented sufficient evidence that, when taken together, provides a "convincing mosaic" of circumstantial evidence suggesting that the Defendant's true reason for not selecting him for an equipment specialist position was race or sex discrimination. Pl. Br. at 11. As discussed above, the Eleventh Circuit has reiterated that a plaintiff is not required to present evidence

that rigidly follows the *McDonnell Douglas* factors in order to defeat a motion for summary judgment. In *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019), the Eleventh Circuit held that a plaintiff may survive summary judgment if they present a "convincing mosaic" of circumstantial evidence from which a factfinder can infer discriminatory motivation. *Lewis*, 934 F.3d at 1185. This can "be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent may be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)).

> In support of his "convincing mosaic" argument, Plaintiff contends that:
>
> Plaintiff has presented evidence to show that Defendant deviated from its own policy, that it denied Plaintiff a position despite his being overqualified for it, that significantly younger, white, and female applicants were hired, that a panelist asked Plaintiff about how long he intended to work during the course of the interview process, and that an employee who did not meet the minimum qualifications for the position was selected over Plaintiff. All of these factors provide a convincing mosaic of circumstantial evidence sufficient for him claims to survive summary judgment.

Pl. Br. at 12. But as discussed, Plaintiff has failed to demonstrate that the GSA "deviated" from its policy, nor has he demonstrated that he was "overqualified" for

70

the equipment specialist position, or that the GSA treated him any differently from the other applicants during the interview process.

In sum, the Plaintiff's argument that he has presented a "convincing mosaic" of evidence to establish pretext is primarily based on his opinion that he was more qualified than the other applicants because he believed that he had more years of relevant experience. But while Plaintiff may not agree with Defendant's reasons for selecting the other applicants over him for the equipment specialist position, Title VII does not offer a remedy in this situation. Absent evidence of unlawful discrimination, an employer's decision to choose one applicant over another for a position is generally not subject to second-guessing by a judge or jury. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.").

As the Eleventh Circuit has explained:

Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. Title VII addresses discrimination. . . . Title VII is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question

> is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.

*Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1984) (internal quotes and citations omitted); *see also Rojas v. State of Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (Title VII does not permit courts to sit in judgment of "whether a business decision is wise or nice or accurate"); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer") (internal quotes omitted); *Shealy v. City of Albany*, 89 F.3d 804, 806 n.6 (11th Cir. 1996) (court "does not sit as a sort of 'super personnel officer' . . . correcting what the judge perceives to be poor personnel decisions"); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (the court does "not sit as a super-personnel department that reexamines an entity's business decisions . . . no matter how mistaken").

The undersigned thus finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether Defendant's proffered reason for selecting the other candidates over him for the equipment specialist position was merely a pretext for unlawful discrimination on the basis of Plaintiff's race or sex. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for

Summary Judgment [51] be **GRANTED** as to Plaintiff's Title VII claim of race discrimination, as asserted in Count I of the Second Amended Complaint, and **GRANTED** as to Plaintiff's Title VII claim of sex discrimination, as asserted in Count II of the Second Amended Complaint.

#### 2.   Age Discrimination

##### a.   Standards of Proof under the ADEA

In Count III, Plaintiff alleges that Defendant discriminated against him on the basis of his age, in violation of the ADEA. The ADEA applies to individuals over the age of 40 and provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1) and 631(a); *see also Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). The ADEA thus makes it unlawful for an employer to discriminate against employees over the age of forty on the basis of their age. *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581 (2004) (the ADEA prohibits discrimination against employees over forty, not all discrimination on the basis of age).

Although age discrimination is not covered by the provisions of Title VII, the Eleventh Circuit has held that framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v.*

*Burdine*, 450 U.S. 248 (1981) to analyze claims of discrimination under Title VII is generally also applicable to analyzing claims of age discrimination under the ADEA. *See Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1556 (11th Cir. 1995); *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519-1520 (11th Cir. 1990); *Pace v. Southern Railway Sys.*, 701 F.2d 1383, 1385-1386 (11th Cir. 1983). Thus, a plaintiff asserting a claim under the ADEA may establish discriminatory intent either by direct evidence or by circumstantial evidence meeting the four-pronged test set out in *McDonnell Douglas* and *Burdine*.[7] *See Walker*, 53 F.3d at 1555-56 (under the ADEA, a plaintiff must establish discriminatory intent based on age through the presentation of either direct evidence or circumstantial evidence); *see also Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018).

---

[7] The Supreme Court has not expressly approved the application of the *McDonnell Douglas* framework to claims of age discrimination under the ADEA. *See Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), utilized in Title VII cases is appropriate in the ADEA context."). Nevertheless, because the Eleventh Circuit has repeatedly applied the *McDonnell Douglas* framework to claims of age discrimination under the ADEA and the Supreme Court has not rejected that approach in resolving an ADEA claim on summary judgment, the Court will apply that framework to Plaintiff's ADEA claim.

A plaintiff "cannot succeed unless the employee's age actually played a role in [the employer's decision-making] process *and had a determinative influence on the outcome*." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009) (emphasis in *Gross*). Thus, whether a plaintiff presents direct evidence or circumstantial evidence, in order to prevail on a claim of age discrimination under the ADEA, a plaintiff must ultimately prove at trial that the plaintiff's age was a "determinative factor" in the employment decision, or, in other words, that the decision at issue would not have occurred absent the age discrimination. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1550 (11th Cir. 1984); *see also Gross*, 557 U.S. at 176 ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.") (*citing Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)).

b.   Plaintiff's *Prima Facie* Case

As with his claims of race and sex discrimination, Plaintiff does not argue, nor has he cited to any record evidence, that he has presented direct evidence that anyone at the GSA intended to discriminate him on the basis of his age. *See* Pl. Br. at 6-7 (arguing only that he has presented a *prima facie* case of age discrimination through circumstantial evidence). Thus, Plaintiff's claim of age discrimination is based on

circumstantial evidence and must be analyzed under the *McDonnell Douglas-Burdine* framework. Under that framework, Plaintiff must first present sufficient evidence to establish a *prima facie* case of discrimination.

In general, a plaintiff may assert a *prima facie* case of unlawful age discrimination under the ADEA by alleging sufficient facts to show that: (1) he is a member of the protected group over the age of forty; (2) he was subjected to an adverse employment action, *e.g.*, a discharge, demotion, or failure to hire; (3) he was replaced by a person outside the protected group or a substantially younger person, or was rejected for a position in favor of the substantially younger person; and (4) he was qualified to do the job at issue. *See Liebman*, 808 F.3d at 1298; *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age forty).

In this case, the Defendant concedes that, because all the applicants chosen for the equipment specialist positions were either under the age of 40 or at least significantly younger than Plaintiff, Plaintiff has established a *prima facie* case on his claim of age discrimination under the ADEA. *See* Def. Br. at 19 ("the evidence shows that substantially younger applicants were selected for the Vacancy

Announcement"). As with Plaintiff's claims of race and sex discrimination under Title VII, Defendant nevertheless argues that she is entitled to summary judgment on Plaintiff's ADEA claim because, she argues, she has produced evidence that Mr. Marlow had a legitimate reason for selecting the other candidates for the equipment specialist position, and Plaintiff has presented no evidence that the GSA's reason was a mere pretext to disguise unlawful discrimination against Plaintiff on the basis of his age.

### c.     Defendant's Legitimate Reason

As discussed above in connection with Plaintiff's claims of discrimination under Title VII, the Court finds that Defendant has presented sufficient evidence that Mr. Marlow had a legitimate reason for selecting the other applicants over Plaintiff for the equipment specialist positions, and those reasons are unrelated to any intent to discriminate against Plaintiff based on his age. Thus, in order to defeat the Defendant's Motion for Summary Judgment, the Plaintiff is required to cite to evidence in the record that would be sufficient to establish that Defendant's proffered reason was merely a pretext to disguise unlawful discrimination against Plaintiff on the basis of his age.

### d.     Pretext

The legal standards governing Plaintiff's obligation to show pretext are discussed above in connection with his claims of race and sex discrimination.

Plaintiff primarily relies on the same arguments to show pretext based on age discrimination, including that his qualifications were so great that no reasonable person could have selected the other candidates over Plaintiff for the equipment specialist position. For the reasons explained above, the Court finds that Plaintiff has not cited to sufficient evidence to support this argument, and has not met the high standards set by the Eleventh Circuit to establish pretext based on his perceived superiority in qualifications.

In connection with his claim of age discrimination, however, Plaintiff also cites to additional evidence that he argues is evidence of pretext. Plaintiff contends that he was asked a question during the interview that suggests an inference that the GSA discriminated against him based on his age. Plaintiff contends that Mr. Curtis asked him how long he planned to work at GSA and he responded that that he would work as long as his health allowed him to. Pl. SMF at ¶ 16; Pl. Dep. at 51 ("Chris asked me, he said, well, sir, if you're select for this job, how long do you plan to work? And I was kind of shocked. I looked at them, and I said well I plan to work, as long as my health hold on.").

Defendant argues that the "interview panelists all agree that Plaintiff was never asked how long he intended to work at the GSA." Def. Br. at 24. According to Defendant, the Plaintiff responded to Question 2 (asking about future plans and career goals) by stating that he intended to work for five more years. *Id*. Thus,

Defendant contends, it was the Plaintiff who brought up how long he intended to work. *Id*. But as discussed above, when considering a defendant's motion for summary judgment, the Court must view all disputed facts in the light most favorable to the non-movant, and thus, it must credit the Plaintiff's testimony that Mr. Curtis asked him how long he intended to work for the GSA.

A co-employee's discriminatory statements may constitute circumstantial evidence of an employer's discriminatory intent. *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729-30 (11th Cir. 1999). But the substance, timing, and context of such comments is important to determining the strength of any inference that may be drawn from the remarks. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362-63 (11th Cir. 1999). Courts have held that an employer's merely asking a job applicant about their age is not sufficient to establish a claim of age discrimination; as the First Circuit has stated, a question from an employer about an individual's age and retirement plans is "a textbook example of an isolated remark which demonstrates nothing." *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998).

The Court finds that Mr. Curtis's question is not sufficient evidence of pretext. Simply gauging an applicant's temporal commitment to a new position is not itself impermissible, and is not necessarily based on age. As the Eighth Circuit explained in *Lee*, an employer's asking an applicant how long he intends to work is not

evidence that age discrimination motivated the employer's decision not to hire him. Although a job applicant's expected years of work is related to his age, "factors other than age, but which may be correlative with age, do not implicate the prohibited stereotype, and are thus not prohibited considerations." *Lee*, 432 F.3d at 853-54 (quoting *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1412 (8th Cir. 1997) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). Even statements by a decisionmaker to an employee allegedly made while explaining the decision to demote him, "Twenty years is too long. You should have moved five years ago," did not constitute direct evidence of age discrimination, because "[t]o amount to direct evidence of age discrimination, there would have to be evidence that [the employer] was using length of tenure as a proxy to accomplish age discrimination." *Id*. (quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 725 (8th Cir. 2001)); s*ee also Woody v. St. Clair County Comm'n*, 885 F.2d 1557, 1562-63 (11th Cir. 1989) (the employer's "evaluation of the candidates as to how long they would stay on the job" was not pretextual because the employer had a "legitimate" concern about employee turnover and the employer used "objective indicators in considering whether an applicant was likely to remain"); *Lee v. Rheem Manufacturing Co.*, 432 F.3d 849, 853-54 (8th Cir. 2005) ("[n]o reasonable fact-finder could conclude that the questions and statements posed to [the plaintiff] [regarding his health and how long

he intended to work] are direct evidence that age discrimination actually motivated [the employer's] decision not to hire [the plaintiff]").

Defendant's standard interview questions clearly cover, among several other legitimate topics, the applicants' future career goals. This is not impermissible, as an employer may generally consider whether an applicant thoughtfully articulates career goals and how a position might fit those goals, and this subject is not necessarily correlated with age. Mr. Curtis's question about Plaintiff's future plans was likewise not impermissible. There is no indication that Mr. Curtis or any other interviewer marked Plaintiff lower specifically because of his age as opposed to the incomplete and less informative nature of his answers, including, when asked about his career goals and how the position fits those goals, that he "[g]ets tired of doing nothing." Def. SMF at ¶ 161; Ridings Decl. at ¶¶ 46-51.

Further, this was a single question by one of three interviewers, among numerous other questions, the answers to which were all independently scored and averaged. This one mere question does not refute the overall reasons offered to explain the hiring decision, including that Plaintiff simply did not score high enough on the composite average scores to proceed to the next round.

In the end, therefore, Plaintiff has not offered any evidence suggesting that the Defendant's proffered reason for selecting the other applicants—their higher average scores on the 10 interview questions—was false, nor has he cited to any

evidence suggesting that the alleged question posed by Mr. Curtis during the interview regarding how long he intended to work at the GSA was merely a proxy to disguise age discrimination. *See Raper v. Morgan Cty. Bd. of Educ.*, No. CV-11-S-80-NE, 2013 WL 988081, at *6 (N.D. Ala. Mar. 13, 2013) (employer's statement to plaintiff that he was "getting on [up there] in age," and his inquiry as to how long plaintiff thought he was "going to be around" was not sufficient evidence to establish age discrimination because those "statements merely alluded to plaintiff's age without expressly indicating that it would factor into [the employer's] decision").

The undersigned finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether Defendant's proffered reason for selecting the other candidates over him for the equipment specialist position was merely a pretext for unlawful discrimination on the basis of Plaintiff's age. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [51] be **GRANTED** as to Plaintiff's ADEA claim of age discrimination, as asserted in Count III of the Second Amended Complaint.

## III.    RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendant's Motion for Summary Judgment [51] be **GRANTED** and that judgment be entered in favor of Defendant on all of Plaintiff's claims.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 29th day of May, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE